**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTICT OF FLORIDA**
**MIAMI DIVISION**

Case No. 1:13-cv-24280

—————————————————————x
:
TONI D. MURRAY, individually and on :
behalf of all others similarly situated, :
:
:
Plaintiff, :
:                    CLASS ACTION
v. :
:                    DEMAND FOR JURY TRIAL
:
NATIONSTAR MORTGAGE, LLC; :
NATIONSTAR MORTGAGE HOLDINGS, :
INC.; ASSURANT, INC.; and AMERICAN :
SECURITY INSURANCE COMPANY, :
:
Defendants. x
—————————————————————

## <u>CLASS ACTION COMPLAINT</u>

This is a proposed class action complaint ("Complaint") brought by plaintiff Toni D. Murray ("Plaintiff") on behalf of herself and all other persons who have or had a residential mortgage loan or line of credit owned and/or serviced by defendants Nationstar Mortgage, LLC ("Nationstar Mortgage") and Nationstar Mortgage Holdings, Inc. ("Nationstar Holdings") (collectively "Nationstar" or the "Nationstar Defendants") and, in connection therewith, were required to pay for "force-placed" insurance on the secured property. Plaintiff alleges that the Nationstar Defendants derive improper financial benefits by imposing force-placed insurance policies on properties. More particularly, Nationstar is charging residential borrowers for the "cost" of procuring force-placed insurance from defendant Assurant, Inc. ("Assurant, Inc.") and its subsidiaries including defendant American Security Insurance Company ("ASIC") (collectively

1

"Assurant" or the "Assurant Defendants") (the Assurant Defendants, together with the Nationstar Defendants, "Defendants"), and other contracted insurance agents of Nationstar, but that a portion of such "cost" is returned, transferred, or paid to Nationstar and/or its related entities.  Plaintiff seeks to recover damages equal to the amount of the improper and inequitable financial benefit received by Defendants and/or their affiliates as a result of this anti-consumer practice, and to rescind the future collection of amounts charged against the mortgage accounts of residential borrowers but not yet collected.

## I.    <u>INTRODUCTION</u>

1.    This class action involves challenges to a practice known as force-placed (also known as "lender-placed") insurance, wherein a bank, lender, or servicer purchases an extraordinarily expensive insurance policy when such bank, lender or servicer feels the borrower does not have sufficient insurance coverage to cover the lender's interest in the property against fire, flood, wind, and/or other perils, then forcefully charges a borrower for the premium of this policy.  Plaintiff and a nationwide class of consumers have suffered and will continue to suffer as a result of the practices of Defendants relating to force-placed insurance policies, as set forth herein.  More particularly, Defendants have, *inter alia*, engaged in a systematic nationwide kickback scheme where the force-placed insurer, Assurant, kicks-back portions of the force-placed insurance premium to Nationstar.

2.    Although lenders generally have the right to force-place insurance (all of which are a form of "hazard" insurance) where the property securing the loan is not insured by the borrower, Nationstar has flagrantly abused that right by (a) force-placing backdated and/or excessive insurance coverage; (b) accepting kickbacks, commissions, or other compensation in connection with such coverage; and (c) otherwise manipulating the force-placed insurance process.

3.      Plaintiff alleges that Defendants have derived, and continue to derive, improper financial benefits by imposing force-placed insurance policies and other charges on their property, and a class of borrowers defined in paragraphs 94-96 below (collectively the "Class").  Further, Nationstar improperly charged Plaintiff and the Class for Nationstar's procuring force-placed insurance from its contracted carrier, Assurant, but did so pursuant to a pre-arranged undisclosed agreement, where they charged an inflated price for the policy and where Nationstar also agreed to receive commissions and kickbacks transferred back to Nationstar and/or its related entities from its insurance carrier. Nationstar has breached its contract with Plaintiff and the Class by, *inter alia*, entering into this unlawful kickback scheme and overcharging the Plaintiff and the Class to pay for the kickbacks.  This scheme became a large profit center for Nationstar.[1]

4.      Assurant actively participated in this scheme, which is explained in further detail *infra*, by issuing backdated force-placed insurance policies for Nationstar and by agreeing with Nationstar to pay kickbacks, commissions, or other compensation to Nationstar in return for this lucrative business.

5.      Defendants acted capriciously, engaged in this conduct in bad faith, and in contravention of the parties reasonable expectations knowing that their actions were (a) not authorized by the mortgages of Plaintiff or the Class members and (b) inconsistent with applicable law.

6.      Nationstar has preyed on the Plaintiff and the Class members as an opportunity to obtain additional profits and has done so in breach of its contract.

---

[1] Note, Plaintiff do not challenge the rate of their force-placed insurance policy as excessive. Rather, Plaintiff challenge, among other things, Nationstar's decision to purchase force-placed insurance from Assurant which, in turn, provides an improper financial benefit to Nationstar and/or their affiliates.

7.     Based on this egregious conduct, Plaintiff asserts claims against the Defendants for breach of express contract and breach of the implied covenant of good faith and fair dealing (Count I against Nationstar), unjust enrichment (Count II against all Defendants), breach of fiduciary duty (Count III against Nationstar), violation of the federal Truth in Lending Act (TILA) (Count IV against Nationstar), conversion (Count V against Nationstar), tortious interference with a business relationship (Count VI against Assurant), and aiding and abetting breach of fiduciary duty (Count VII against Assurant).

8.     Plaintiff and the Class seek injunctive relief, corresponding declaratory relief, monetary relief, punitive damages, and all other appropriate relief that is appropriate and warranted as a result of Defendants' unlawful conduct.

## II.     **PARTIES**

9.     Plaintiff Toni Murray resides in Longwood, Florida.  Plaintiff is a member of the proposed Class.

10.    Defendant Nationstar Holdings is the parent company and owner of Defendant Nationstar LLC.  Defendant Nationstar Holdings, a Delaware company, is a publicly-traded company on the New York Stock Exchange under ticker symbol "NSM."  Defendant Nationstar Holdings does business in Florida, where its property portfolio is heavily concentrated, as well as throughout the United States via its subsidiaries.  *See* Nationstar Holdings, Form 10-K, at 24 (Feb. 20, 2013) [hereinafter "Nationstar Form 10-K"] (attached hereto as Exhibit 1).  Nationstar Holdings exercises control over the force placed insurance activities of Nationstar Mortgage. Nationstar increased its servicing portfolio by 94% last year to $198 billion.  *Nationstar Sued for Selling Loans Rather Than Servicing*, Bloomberg.com, March 7, 2013, http://www.bloomberg.com/news/2013-03-07/nationstar-mortgage-sued-in-new-york-by-investor-over-loan-sale.html

(attached hereto as Exhibit 2). Defendant Nationstar Holdings can be served through its statutory agent The Corporation Trust Company, Corporate Trust Center, 1209 Orange Street, Wilmington, Delaware 19801.

11.    Defendant Nationstar Mortgage is a Delaware limited liability company with its principal place of business in Lewisville, Texas. Defendant Nationstar LLC maintains an operations center in Miami, Florida and does business in Florida and throughout the United States. During the relevant time period, Defendant Nationstar Mortgage served as the servicer of the loans of Plaintiff and the Class members. Defendant Nationstar Mortgage can be served through its registered agent, Corporation Service Company, 1201 Hays Street, Tallahassee, FL 32301-2525.

12.    Defendant Assurant, Inc. is a Delaware corporation which is headquartered at One Chase Manhattan Plaza, New York, New York 10005. According to its website, Assurant, Inc. is a provider of specialized insurance products including "lender-placed" homeowners insurance or FPI. *See* About Us, Assurant, Inc. Website, http://www.assurant.com/about/ (attached hereto as Exhibit 3). According to Assurant, Inc.'s 2012 Annual Report as filed with the Securities and Exchange Commission ("SEC") on Form 10-K, "the majority of [Assurant, Inc.'s] lender-placed agreements are exclusive" and those agreements require it to "issue these policies automatically when a borrower's insurance coverage is not maintained." Assurant, Inc., Form 10-K, at 5 (Feb. 20, 2013) [hereinafter "Assurant Form 10-K"] (attached hereto as Exhibit 4). Assurant, Inc. exercises control over the force placed insurance activities of ASIC. Assurant, Inc. has four operating segments – Assurant Solutions, Assurant Specialty Property, Assurant Health, and Assurant Employee Benefits. *Id.* at 1.

13.    Defendant ASIC is an insurance company writing force-placed insurance policies in all fifty states and the District of Columbia with its principal address at 260 Interstate North

Circle SE, Atlanta, Georgia 30339.  ASIC is an indirect subsidiary of Assurant, Inc. and one of Assurant, Inc.'s exclusive force-placed insurance providers.  Upon information and belief, (a) ASIC sometimes operates under the trade names Assurant Solutions and Assurant Specialty Property; (b) ASIC contracts with Nationstar whereby it acts as a force-placed insurance vendor: (c) ASIC's duties include, but are not limited to, tracking loans in Nationstar's mortgage portfolio, handling all customer service duties related to force-placed insurance, and securing force-placed insurance policies on properties when a borrower's insurance has lapsed; and (d) ASIC passes much of its profits from force-placed insurance to its corporate parent Assurant, Inc.[2]

### III.  JURISDICTION AND VENUE

14.     This Court has original jurisdiction of this action under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d)(2) and (6).  The amount in controversy in this action exceeds $5,000,000, exclusive of interest and costs, there are more than 100 members of the Class, and Plaintiff and Defendants are citizens of different states.

15.     This Court also has original jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. § 1331.  Plaintiff's state law claims arose out of the same transaction and occurrence as their TILA claim – specifically, all claims arose out of Nationstar's commissions and kickbacks scheme, its efforts to increase kickbacks by requiring backdated and/or excessive insurance, and its manipulation of the force-placed insurance process – and are so related to Plaintiff's TILA claim that they form part of the same case or controversy.

16.     This Court also has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

---

[2] Plaintiff reserves all rights to add additional defendants at a later time should discovery reveal it to be appropriate.

17.     Venue is proper in this district under 28 U.S.C. § 1391(b) because Defendants regularly conduct business in this district and/or a substantial part of the events giving rise to the claims occurred in this district.

## IV.     <u>FACTUAL ALLEGATIONS</u>

18.     As one journalist recently observed:

> In the pantheon of modern-day mortgage abuses, force-placed insurance hasn't attracted much attention. But it generates hundreds of millions of dollars a year in fees and commissions for insurance companies, banks and other financial institutions. Policies are sometimes backdated to cover periods that have already passed.
>
> In essence, critics say, high-priced insurance policies cover a time when no events happened. And often, the mortgage company and the force-placed-insurance company are affiliated, with the mortgage company receiving a "service fee" in return for the business. But homeowners don't know that.

*See* Dave Lieber, *Everyone Profits Off Force-Placed Insurance, Except Homeowner*, Star-Telegram (Oct. 1, 2011) (attached hereto as <u>Exhibit 5</u>).

19.     The force-placed insurance practices of lenders, loan servicers and insurance companies have now come under major scrutiny.  The New York Department of Financial Services Superintendent Benjamin N. Lawsky noted that the Department's initial inquiry uncovered "serious concerns and red flags" which included:  (1) exponentially higher premiums for force-placed insurance than regular homeowners insurance; (2) extraordinarily low loss ratios; (3) serious harm to distressed borrowers; (4) lack of competition in the market; (5) force-placed insurance has become a major profit center for both banks and insurers; and (6) "tight relationships between banks, their subsidiaries and insurers"; (7) and systematic kickback schemes.   As Superintendent Lawsky summarized, the net result of these practices:

> Take the form of large commissions being paid by insurers to the banks for what appears to be very little.  In other cases, banks have

set up reinsurance subsidiaries who take over the risk from the insurance companies. Thus, the banks pay high premiums for coverage that is highly profitable and then those profits revert right back to the banks through reinsurance agreements.

\* \* \*

In sum, when you combine [the] close and intricate web of relationships between banks and insurance companies on the one hand, with high premiums, low loss ratios and lack of competition on the other hand, it raises serious issues and questions ….

*Force-Placed Insurance Hearings: New York Department of Financial Services* (May 17, 2012) (Opening Remarks of Benjamin M. Lawsky, Superintendent of Financial Services) (attached hereto as Exhibit 6); *see also Under Interrogation,* American Banker (Jan. 27, 2012), http://www.americanbanker.com/news/force-placed-insurance-subpoenas-1046159-1.html (attached hereto as Exhibit 7); *Flurry of Subpoenas Raises Force-Placed Stakes*, American Banker (Jan. 27, 2012), http://www.americanbanker.com/issues/177_19/force-placed-insurance-subpoenas-probe-1046157-1.html (attached as Exhibit 8); Gretchen Morgenson, *Hazard Insurance With Its Own Perils,* N.Y. Times (Jan. 21, 2012), http://www.nytimes.com/2012/01/22/business/wind-insurance-with-its-own-perils-fair-game.html (attached hereto as Exhibit 9).

20.     The New York Department of Financial Services conducted hearings in furtherance of its investigation on May 17, 18 and 21, 2012, during which fact-finding regarding the force-placed insurance practices of Assurant and its lender/servicer partners (such as the Nationstar Defendants) were among the topics addressed by witnesses and in written testimony.  *See, e.g.*, *New York Department of Financial Services: April 12, 2012 Notice of Public Hearings, issued pursuant to N.Y. Financial Services Law §§ 305 and 306 and the Department's Request for Written Testimony Pursuant to N.Y. Insurance Law § 308* (testimony of John Frobose, President American

Security Insurance Company) ("Frobose NYDFS Testimony") (attached hereto as Exhibit 10); *New York State Department of Financial Services, Financial Frauds & Consumer Protection Division, Public Hearing on Lender Placed Insurance* (May 3, 2012) (testimony of Robert A. Segnini) ("Segnini NYDFS Testimony") (attached hereto as Exhibit 11); *New York Department of Financial Services: Public Hearing on Force-Placed Insurance* (May 21, 2012) (testimony of Birny Birnbaum on behalf of the Center for Economic Justice) ("Birnbaum NYDFS Testimony") (attached hereto as Exhibit 12); and *New York Department of Financial Services on Force-Placed Insurance in New York* (May 17, 2012) (testimony of J. Robert Hunter, Director of Insurance) ("Hunter NYDFS Testimony") (attached hereto as Exhibit 13).

21.     In addition, the National Association of Insurance Commissioners ("NAIC") – the lead national insurance regulatory organization created and governed by the chief insurance regulators from all 50 states that is charged with establishing standards and best practices, conducts peer review, and coordinates regulatory oversight – recently began investigating force-placed insurance practices and held public hearings on August 9, 2012 to look into the force-placed insurance practices of banks and their partners.  *See* Mark E. Ruquet, *NAIC Promises Greater Focus on Force-Placed Insurance as CFPB Proposes Rules*, PropertyCasualty360.Com (Aug. 10, 2012),   http://www.propertycasualty360.com/2012/08/10/naic-promises-greater-focus-on-force-placed-insura (attached hereto as Exhibit 14).

22.     In this action, Plaintiff challenge Nationstar's practice of purchasing force-placed insurance from insurance vendors including Assurant pursuant to agreements that return a substantial financial benefit and kickbacks to the Nationstar Defendants or their affiliates that is not reasonably related to any *bona fide* interest in protecting the Lender's interest in the loan, and

which results in unauthorized, unjustified and unfairly inflated costs to the borrower for force-placed hazard and flood insurance in violation of law.

23.     As set forth in detail below, throughout the relevant time period, Nationstar has engaged in unlawful, abusive, and unfair practices with respect to force-placed hazard and flood insurance, including, without limitation: (a) providing force-placed insurance according to pre-arranged agreements with Assurant at a substantial and inappropriately high cost to the Plaintiff and similarly-situated borrowers; (b) receiving kickbacks in the form of purported fees, payments, commissions, rebates, reduced tracking and monitoring costs, and/or receiving other things of value from Assurant and its providers of force-placed insurance; (c) forcing borrowers to pay for insurance which is not required; (d) improperly exploiting the ability to manage and gain access to escrow funds in breach of fiduciary obligations to increase profits to lenders, servicers, and insurance providers; (e) forcing borrowers to pay for backdated insurance coverage; and (f) misrepresenting that Defendants were force-placing insurance on Plaintiff's and Class members' properties to secure their interests and omitting to inform Plaintiff and the Class that they were force-placing insurance on their homes in such a manner as to generate substantial unreasonable and unwarranted profits for Defendants.

24.     Nationstar's unlawful actions include, *inter alia*, purchasing unconscionably high-priced force-placed insurance policies from Assurant and/or other force-placed insurance providers; entering into pre-arranged agreements to acquire force-placed insurance from Assurant and/or other vendors without any regard for competitive pricing; entering into pre-arranged agreements that yield exorbitant force-placed insurance in order to maximize Nationstar's own profits to the detriment of borrowers; backdating the force-placed policies to charge for worthless retroactive coverage; and receiving kickbacks in the form of purported fees, payments,

commissions, rebates, reduced tracking and monitoring costs, and/or other things of value for the procurement of the force-placed policies with all the associated increases in the premiums for the insurance being improperly passed on to consumers.  These actions constitute a pattern and scheme of exploitative profiteering and self-dealing which are unlawful and adverse to the interests of Plaintiff and the Class and in violation of the law.

25.    The Nationstar Defendants and/or their affiliates have entered into agreements with Assurant pursuant to which Nationstar or their subsidiaries or affiliates:  (a) receive a portion of the premiums for each force-placed insurance policy purchased for a borrower; and/or (b) assume a portion of the force-placed insurance policies originally written by force-placed insurance providers without any real or commensurate transfer of risk.

26.    While Plaintiff challenges, among other things as described herein, Nationstar's manner in the first instance to require Plaintiff to purchase force-placed hazard insurance, this case also involves their scheme to purchase unreasonably priced force-placed insurance as part of its scheme to engage in self-dealing and provide a financial benefit to Nationstar and their affiliates while providing substantially less coverage to the Plaintiff.

27.    Because the Nationstar Defendants have negotiated deals with Assurant and/or other force-placed insurance providers pursuant to which Nationstar receives a percentage of the cost of the premiums of each force-placed insurance policy purchased for a borrower, this kickback arrangement encourages Nationstar to select the most expensive force-placed insurance policy at the borrowers' expense.

28.    Thus, while Plaintiff does not challenge Nationstar's ability generally to require hazard insurance in accordance with the provisions of their mortgage contract—and flood insurance if the property is located in a Special Flood Hazard Area as determined by the Federal

Emergency Management Agency—and to charge a bona fide and commercially reasonable premium for the same, Plaintiff challenges in this Class Action Complaint, the charging of hazard and/or flood insurance and the manner in which the Nationstar Defendants manipulated the force-placed insurance process for its own financial gain in breach of its contractual and fiduciary duties and in violation of law with Assurant.

29.     At issue is whether Nationstar and Assurant have been unjustly enriched by manipulating the force-placed insurance process so as to systematically engage in a kickback scheme; breached the express and/or implied terms of the mortgage contract (including the covenant of good faith and fair dealing) of Plaintiff and the Class; breached its fiduciary duties and/or aided and abetted the breach of fiduciary duties; violated TILA; and converted the funds of Plaintiff and the Class by unreasonably, unconscionably, and unlawfully exercising their contractual discretion to manipulate the force-placed insurance process so as to obtain financial benefits for themselves at Plaintiff's and Class members' expense.

A.      **Force-Placed Insurance Background**

30.     Lenders typically require borrowers to purchase and agree to maintain homeowner's insurance coverage on their secured property as a condition to closing.  In the event the insurance lapses, the mortgage agreement permits the Lender to force-place insurance coverage and charge premiums to the borrower rather than declare the borrower in default.

31.     The discretion afforded to Nationstar to force-place insurance, however, is limited by the bounds of reasonable conduct and by the express terms of the mortgage itself.  Nationstar and Assurant routinely exceeded the bounds of reasonableness and the spirit, intent, and letter of the mortgage contract by force-placing hazard and flood insurance in a manner and in amounts

that are not required to protect the Lender's interest in the property and through other conduct described herein.

32.     Specifically, standard form mortgage contracts, like the mortgage at issue in this action, do not disclose that the lender or loan servicer will receive an improper financial benefit or kickback (regardless of the form) in connection with the force-placed insurance policy.  Instead, these contracts only state that the lender may take *necessary action for the purpose of protecting the lender's interest in the secured property.*

33.     The force-placed insurance policies procured by Nationstar are extraordinarily more expensive than standard insurance coverage as is clearly shown by Plaintiff's policy described below in paragraph 78.  Reportedly, such policies can cost as much as ten times (10x) more than standard policies.  While the force-placed insurance policy is primarily for the benefit of the Lender, the excessive cost, which results from the kickbacks, commissions, and/or reinsurance payments contained in the premium, is passed on to the borrower.  *See Ties to Insurers*; *see, e.g.*, *American Banker Wins Investigative Journalism Award*, American Banker (Mar. 18, 2011), http://www.americanbanker.com/news/sabew-1034635-1.html (attached hereto as Exhibit 15).

34.     The Defendants have entered into an arrangement such that a competitively priced insurance policy is not actually "found" for any given property.  Therefore, the notion that any "commission" is due to either Nationstar or Assurant is false.  Rather, the Defendants have a pre-set arrangement by which Assurant has access to and searches Nationstar's database to find potentially lapsed insurance policies.  Then, Assurant writes to the homeowners to notify them of the force-placed coverage.  Assuming there is even a potential lapse in coverage, insurance is automatically placed—the provider of the insurance and the cost of the insurance are pre-

determined under this relationship.  Further, the cost of the insurance of each home bears no relation to each homeowner's individual home, rather it is pre-determined based upon Nationstar's entire portfolio of mortgages.

35.     Therefore, Nationstar is not just paying Assurant for force-placed insurance, rather it is paying Assurant for a bundle of services including performing Nationstar's job of administering and servicing the mortgages (monitoring Nationstar's entire portfolio for lapses and providing proper notification to homeowners under the mortgage).  This bundle of administrative services includes Nationstar's cost of monitoring and servicing its entire portfolio of loans and is not permitted to be charged to Plaintiff or similarly situated borrowers under the terms of the mortgages.

36.     Under this arrangement, the "premiums" for insurance that are charged to the Plaintiff are exorbitant and illegal because they not only include the excessive cost of insurance, but they also include illegal kickbacks and the cost of the bundle of administrative services that Assurant is providing to Nationstar.

37.     This arrangement insures that Assurant is the only entity providing insurance, with Nationstar signing off and collecting kickback commissions, and the consumer providing the money.

38.     If the consumer cannot afford to pay the exorbitant premiums for force-placed insurance, the premiums are added to the mortgage's principal balance.

39.     In addition, the Defendants also retro-actively force-placed exorbitantly priced insurance on homeowners for the periods of time in the past where coverage had lapsed.  This practice was done to the Plaintiff and other borrowers despite the fact that there are no claims during the lapsed period and the homeowner has since secured standard insurance.  Moreover,

retroactive forced placed insurance is especially egregious given the fact that the National Association of Insurance Commissioners has stated that insurance is "prospective in nature" and that policies should not be backdated.

40.     The actions and practices described herein represent bad faith and unconscionable practices that, even if the terms of the mortgage could be construed to allow, would still be an abusive and unlawful use of its contract powers.  Placing these unreasonably, non-competitively, and excessively priced insurance policies on Plaintiff and the similarly situated Class Members' mortgages without regard for competition on the open market to obtain a commercially reasonable price, is solely to maximize their own profits through the exorbitant cost of and by collecting kickbacks on those policies.  Said conduct is prohibited by state and federal law.

41.     Defendants' manipulation of their force-placed mortgage purchases has maximized the profits to themselves to the great detriment of Plaintiff and the Class.

42.     Defendants were not, and are not, authorized by any federal, state or local governing body, contract, or agreement to manipulate their forced placed insurance purchases in bad faith as alleged herein.

43.     Furthermore, these fraudulent practices have recently come under fire by State Attorneys General as part of a nationwide investigation, as they have recognized this practice has greatly contributed to the foreclosure crisis.  A coalition of forty-nine (49) State Attorneys General entered into an historic joint state-federal settlement agreement with the country's five largest loan servicers ("National Mortgage Settlement") to address numerous problems that have surfaced during the foreclosure crisis.  *See* the official website established by the government relating to the settlement, http://www.nationalmortgagesettlement.com.

**B.     Loan Servicers And Lenders Like Nationstar Commonly Have Undisclosed Lucrative Pre-Arranged Agreements To Exclusively Refer Borrowers To Certain Force-Placed Insurance Providers Such As Assurant**

44.     The force-placing of insurance policies is a very lucrative business for lenders and loan servicers.  Commonly, the servicer selects the provider in accordance with a pre-arranged agreement and force-places the policy in such a way as to receive an improper financial benefit.  The servicer benefits by placing the policy either:  (a) with an affiliate; or (b) with a third-party provider such as Assurant who has already agreed to share revenue with the servicer in the form of a direct kickback or through a "captive reinsurance agreement" whereby "reinsurance" premiums are ceded to a subsidiary/affiliate of the servicer.

45.     Although Nationstar has tried to keep its own commission arrangement(s) with Assurant secret, Assurant pays millions of dollars in commissions each year to the loan servicers and lenders, with whom it enters into kickback agreements, including the Nationstar Defendants.

46.     Under the direct payment arrangement, the provider of the force-placed insurance policy pays a portion of the premium collected either directly to the loan servicer or to a subsidiary or affiliate posing as insurance "agent" as a commission or as a "reimbursement" of the lender and/or servicer's "incurred expenses" related to force-placing the insurance.  Typically, where such payments are commissions, they are often paid to a "licensed insurance agency" that is simply an affiliate or subsidiary of the servicer or lender and exists only to collect the kickbacks or commissions from the force-placed insurance provider.

47.     Under the captive reinsurance arrangement, the provider of the force-placed insurance policy agrees to "reinsure" the force-placed insurance policy with a subsidiary or affiliate "captive reinsurer" of the referring loan servicer.  In return for the subsidiary or affiliate's

purported agreement to assume a portion of the insurer's risk of loss, the insurer cedes to the subsidiary or affiliate a portion of the premiums received on account of the policy.[3]

48.     Illustrative of the typical kickback arrangements is the following graphic from *American Banker*:



49.     J. Robert Hunter of the Consumer Federation described these practices in his testimony before the New York Financial Services Department:

> In some instances, lenders use [force-placed] insurance as a profit center by collecting commissions from insurers through lender-affiliated agents or broker or by receiving below-cost or free services (such as tracking of loans) from insurers, and/or using "fronting" primary insurers to direct the coverage to lender-

---

[3] On November 5, 2013, the Federal Housing Finance Agency ("FHFA") announced that it has directed Fannie Mae and Freddie Mac to prohibit servicers from being reimbursed for expenses associated with captive reinsurance arrangements.  *See FHFA Directs Fannie Mae and Freddie Mac to Restrict Lender-Placed Insurance Practices*, FHFA, November 5, 2013, http://www.fhfa. gov/webfiles/25759/LPI_news_release_110513.pdf (attached hereto as Exhibit 16).

> affiliated captive reinsurers. Lenders often receive free or below cost
> service from affiliated service providers.

*See* Hunter NYDFS Testimony, *supra*.

50.     Birny Birnbaum of the Center for Economic Justice, another experienced and noted

expert in the area of force-placed insurance, testified:

> Servicers have financial incentives to force-place the insurance
> because the premiums include commissions and other
> considerations for the servicer.  With some servicers, the insurance
> is reinsured through captive reinsurer of the servicer, resulting in
> additional revenue to the servicer from the force-placement
> coverage.

*See* Birnbaum NYDFS Testimony, *supra*.

51.     Borrowers have no say or input into the carrier or terms of the force-placed

insurance policies.  The terms and conditions of the insurance policy, as well as the cost of the

policy, are determined by the loan servicer, lender and the insurer, rather than negotiated between

the borrower and the insurer.

52.     For their part, the loan servicers and/or lenders have no incentive to comparison

shop for the best rate as the kickbacks are just passed along to the borrowers.  To the contrary,

servicers are financially motivated to refer borrowers to the providers that will provide the best

financial benefit to the servicer in terms of commissions and/or ceded reinsurance premiums, as

well as other forms of kickbacks.

53.     Commonly, a loan servicer or lender enters into an agreement with an insurance

provider, pursuant to which it refers borrowers <u>exclusively</u> to the provider for force-placed

insurance.

54.     Upon information and belief, Nationstar, either on its own or through its

subsidiaries or affiliates, is party to an agreement with Assurant pursuant to which it receives

payments for the referral of business through one or more of the arrangements described above.

55. Force-placed insurance policies are not underwritten on an individual policy basis. Rather, loan servicers' contracts with force-placed insurance providers such as Assurant require, or at least permit, the insurer to automatically issue these policies when a borrower's insurance coverage is not maintained.

56. As J. Robert Hunter in his recent testimony before the New York Financial Services Department testified, "lack of underwriting should also result in much lower acquisition expenses for FPI insurers, since no sales force is required to place the insurance." *See* Hunter NYFSD Testimony, *supra*.

57. Servicers often go as far as to actually outsource their insurance processing to the force-placed insurance provider. The provider then continuously monitors the servicer's mortgage portfolio and verifies the existence of insurance on each mortgaged property. In the event that borrowers do not maintain adequate insurance coverage, the insurer promptly issues an insurance certificate on the property on behalf and for the benefit of the servicer and lender. Thus, where servicers receive commissions from force-placed insurance providers (which are ultimately charged to borrowers), they are performing no actual service for the commissions they receive. *See Ties to Insurers*, *supra*.

58. "The incentives and potential for abuse in the administration of LPI [lender placed insurance] are great. Consumers do not request the insurance, but are forced to pay for it. The cost of LPI is much higher than a policy the borrower would purchase on his or her own. Lenders have incentive to force-place the insurance because the premium includes a commission to the lender and, in some cases, the insurance is reinsured through a captive reinsurer of the lender, resulting in additional revenue to the lender from the force-placement of the coverage." *See Insurance Oversight: Policy Implications for U.S. Consumers, Businesses and Jobs: Hearing*

*Before the Subcomm. on Insurance, Housing & Community Opportunity Comm. on Financial Services* (July 28, 2011) (testimony of Birny Birnbaum, Executive Director of the Center for Economic Justice) [hereinafter *Birnbaum Testimony*] (attached hereto as <u>Exhibit 17</u>).

59.     In addition, "[t]he prices for residential property LPI are significantly excessive.  In 2009, insurers paid only 16% of net premium in claims and in 2010 the ratio was 17%.  Incredibly, lenders get a commission—totaling hundreds of millions of dollars—out of these premiums, despite the fact that the insurance is placed to protect the lenders' collateral.  The premiums also include the costs of tracking all the loans in the lenders' portfolios to identify those loans without insurance—so the lenders' cost of tracking all loans is passed only to those consumers paying for force-place [*sic*] insurance."  *Id.*

60.     While lenders and/or servicers, including the Nationstar Defendants, profit greatly from the business of force-placed insurance, upon information and belief, they maintain a shroud of secrecy and do not separately report their income from payments received from providers of force-placed insurance.  According to a recent article published by *American Banker*, however, "a cursory review of force-placed insurers' financials suggests that the business brings servicers hundreds of millions of dollars every year."  *See Ties to Insurers*, *supra* (noting that servicers demand generous commissions and other payments in return for their referrals).

61.     Lenders and/or servicers commonly attempt to justify the high price of force-placed insurance policies by pointing to the higher risk associated with the lack of individual policy underwriting.  However, as *American Banker* noted:

> Though part of the extra expense can be explained by the higher risks associated with insuring the homes of delinquent borrowers, force-placed policies generate profit margins unheard of elsewhere in the insurance industry—even after accounting for the generous commissions and other payments that servicers demand.

*See Ties to Insurers*, *supra*.

C.    **Nationstar and Assurant Charge Borrowers For Redundant Or Unnecessary Insurance**

62.    Unnecessary or inappropriately priced insurance arises when a lender and/or servicer forces borrowers to purchase and maintain hazard and flood insurance for their property that is unnecessary and/or in amounts greater than required by law or by their mortgage agreements.

63.    Motivated by the lucrative financial incentive associated with force-placing hazard and flood insurance, upon information and belief, Nationstar has commonly required borrowers to pay for unnecessary insurance coverage.   Such examples include, without limitation: (a) backdating force-placed hazard and flood insurance policies so that they cover time periods already passed when the policy is placed, thus requiring borrowers to pay for retroactive coverage for by-gone periods of time for which no risk of loss any longer exists; (b) requiring borrowers to pay for force-placed hazard and flood insurance policies covering periods of time following a lapse of previous insurance despite the fact that the lender's interest in the property was covered for such time pursuant to either a "standard mortgage clause"[4] or lender's loss payable clause in the previous policy, either of which continues the lender's coverage following a lapse for non-payment of premium; and (c) requiring borrowers to pay for force-placed insurance premiums to cover amounts greater than necessary to protect the lender's interest.   Plaintiff and the Class members were subjected to these egregious business practices.

64.    Simply put, force-placed insurance policies for hazard insurance, or any other type of insurance, should not be backdated.   The National Association of Insurance Commissioners ("NAIC") has indicated that insurance is "prospective in nature."  *See, e.g.*, *Ties to Insurers*, *supra*

---

[4]    *See* Patrick A. Randolph, Jr., A Mortgagee's Interest in Casualty Loss Proceeds: Evolving Rules and Risks, 32 REAL PROP. PROB. & TR. J. 1, 31-42 (1997).

(quoting the NAIC as stating that insurance policies "should not be back-dated to collect premiums for a time period that has already passed"). Requiring borrowers to pay for backdated insurance coverage to cover time periods during which there is already no risk of loss is improper and unlawful.

65.     Moreover, the overwhelming majority of mortgages, including Plaintiff's mortgage, contain a requirement that the borrower purchase property insurance containing a "standard mortgage clause," and/or a "Lender's Loss Payable Endorsement," pursuant to which coverage for the lender continues even after the insured has failed to pay premiums. Accordingly, force-placing insurance policies effective immediately following the termination of the borrower's policy and charging borrowers expensive premiums for such insurance (which include kickbacks to the servicer) is unlawful, unfair, and unconscionable because borrowers are charged for needless and duplicative insurance coverage.

**D.     Nationstar Charged Plaintiff for Unnecessary and Exorbitantly-Priced Force-Placed Insurance Pursuant to Lucrative Pre-Arranged Agreements with Assurant**

66.     On or about June 28, 2006, Plaintiff and Clarence Murray, Teir Morris, and Rosella Murray took out a mortgage with Your-Best-Rate Financial, LLC in the amount of $ 177,000 for a home located at 438 Raymond Avenue, Longwood, Florida 32750 (the "Property") [hereinafter the "Murray Mortgage"] (attached hereto as Exhibit 18).

67.     Paragraph 5 of the Blackburn Mortgage states:

**5.   Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. …

If borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower ….

Murray Mortgage at 6, ¶ 5.

68.     On or about March 30, 2013, Plaintiff received a notice from Nationstar that it had acquired the servicing rights to the Murray Mortgage from Bank of America, N.A.  A second notice followed outlining the same on or about April 8, 2013.

69.     On or about April 29, 2013, Plaintiff received a letter from Nationstar, dated April 23, 2013, acknowledging receipt of proof a hazard insurance policy on the Property in the name of Plaintiff and questioning why it was not in the name of Clarence Murray.  Plaintiff followed up with a phone call to Nationstar to discuss this notice, and the Nationstar representative told her that she was not one of the property owners and that Nationstar required permission to speak with Plaintiff for the life of the loan.  Plaintiff explained that she was a property owner.  The Nationstar representative instructed Plaintiff to send verification to their attention demonstrating her ownership of the Property.  Plaintiff sent a certified letter, dated May 4, 2013, which contained the requested verification in the form of a certified copy of the general warranty deed for the Property.

70.     Plaintiff renewed the hazard insurance policy on the Property with her insurer on July 13, 2013.  *See* Plaintiff's hazard policy attached hereto as <u>Exhibit 19</u>.

71.     On or about August 4, 2013, Plaintiff received another letter from Nationstar, dated July 29, 2013, stating that the hazard policy provided to them was in Plaintiff's name and that she was not an owner of the Property.

72.     On or about August 4, 2013, Plaintiff received notification from Nationstar, dated July 31, 2013, that incorrectly noted that the hazard insurance policy on the Property lapsed on July 13, 2013.  Subsequently, on or about August 30, 2013, Plaintiff received another notice from Nationstar entitled "final notice" regarding the purported lapse in hazard insurance coverage on

the Property.  Such notice contained force-placed insurance coverage in the form of a 60-day binder through ASIC at annual premium cost of $2,530.90.

73.     Plaintiff responded to Nationstar by certified letter on September 9, 2013 (letter and exhibits are attached hereto as Exhibit 20) and explained her past calls and correspondence with Nationstar and she again attached a certified copy of the general warranty deed for the Property in order to conclusively prove to Nationstar that she was a Property owner.

74.     On or about September 16, 2013, Plaintiff filed a complaint with the Consumer Financial Protection Bureau ("CFPB") about her problems with Nationstar in an attempt to receive help in resolving the ongoing dispute over her contested ownership of the Property.

75.     On or about September 18, 2013, Plaintiff received a call from Nationstar asking her to fax proof of her hazard insurance policy to them.  Plaintiff contacted her insurance agent and he sent the requested evidence to Nationstar.

76.     On or about October 2, 2103, Plaintiff received a letter from Nationstar, dated September 25, 2013, regarding Plaintiff's above letter to Nationstar, dated September 9, 2013. This letter stated that Plaintiff was not an authorized party on the account and that Nationstar could not provide Plaintiff with any information on the account.

77.     On or about October 7, 2013, Plaintiff received a call from Nationstar.  The representative asked to speak with Clarence Murray.  Plaintiff explained that he had passed away three years prior.  Plaintiff explained that all of this information was on file with Bank of America, N.A., the entity from which Nationstar acquired the servicing rights to the Murray Mortgage. Nationstar claimed that they did not have any of this information and asked Plaintiff to forward along a copy of the death certificate for Clarence Murray.  Plaintiff sent the requested information.

78.     On or about October 11, 2013, Plaintiff received notice from Nationstar, dated October 6, 2013, that an ASIC hazard insurance policy had been force-placed on the Property at a cost of $2,530.90.  This policy was backdated to July 13, 2013 and was effective through July 13, 2014.  Also, the ASIC policy covered substantially less than Plaintiff's hazard policy, which remained in effect (the ASIC policy only covered the dwelling in contrast to Plaintiff's policy, which covered, *inter alia*, the dwelling along with other structures, personal property, loss of use, personal liability, medical payments, and mold/fungus).

79.     On or about October 15, 2013, Plaintiff sent a certified letter to Nationstar to the attention of a representative whose name she obtained through the filing of her CFPB complaint in an effort to resolve Nationstar's continued refusal to accept her hazard insurance policy.

80.     On or about November 4, 2013, Plaintiff received a letter from Nationstar stating that the name on her mortgage loan account had been updated to "Estate of Clarence Murray." Nationstar continued to refuse to accept Plaintiff's hazard insurance policy, however, which remained in effect.

81.     As set forth *supra*, charging Plaintiff for unnecessary force-placed insurance at inflated premiums that contain kickbacks, commissions, and other forms of compensation to the Nationstar Defendants and/or their subsidiaries or affiliates from the Assurant Defendants, is not necessary to protect the Lender's interest in the Property, especially given that Plaintiff, a Property owner, had a hazard policy that was already in effect and fully complied with the terms of the Murray Mortgage.

82.     Specifically, the Murray Mortgage does not authorize Nationstar to charge Plaintiff's account for kickbacks to Nationstar and for fees or costs that are not actually incurred by Nationstar or that are later refunded to Nationstar in the form of kickbacks, commissions, or

reinsurance payments.  Moreover, the Murray Mortgage does not authorize Nationstar to charge Plaintiff inflated premiums (a) for an insurance policy that has been backdated to cover a period for which a loss cannot occur as such coverage is not necessary to protect Nationstar's financial interest in the property or (b) for an insurance policy to insure a mortgaged property that was already covered by an acceptable hazard insurance policy.

**E.**      **Defendants Practices Artificially Inflate Premiums for Force-Placed Insurance**

83.      As *American Banker* observed, "[w]hile servicers that partner with force-placed insurers customarily perform little of the work in monitoring their portfolios for lapses and writing policies, payments to them are simply a cost of doing force-placed business." *See Ties to Insurers*, *supra*.  These costs, which often include fees for servicing the loan portfolio, are ultimately paid by the borrowers.

84.      Indeed, industry analysts have opined that referral fees, commissions, and other payments to bank affiliates explain why insurers' overhead, which is ultimately passed on to borrowers, is higher—implying paydays for servicers amounting to hundreds of millions of dollars per year. *Id.*

85.      Nationstar's self-dealing scheme to unlawfully profit from its force-placement of insurance keeps premiums for force-placed insurance artificially inflated over time because a percentage of borrowers' premiums are not actually being paid to cover actual risk, but are instead simply funding an illegal kickback scheme.  Amounts paid to servicers and their affiliates as commissions and reinsurance premiums have become a part of the cost of doing business for force-placed insurance providers.  As a result, force-placed insurance premiums incorporate the payment of such kickbacks—to the detriment of borrowers.

86.      The kickback arrangements at issue here between Nationstar and Assurant (and any other insurance vendors with whom Nationstar has arranged for kickbacks) are unquestionably

unjust.  In fact, numerous courts have previously denied motions to dismiss, condemned this type of self-dealing in connection with force-placed insurance, and/or questioned the commissions that Assurant and other force-placed insurance vendors pay to their clients.  *See, e.g.*, *Hutchings v. Nationstar Mortgage, LLC et al.*, No. 1:13-cv-00569, 2013 WL 5670939 (N.D. Oh. Oct. 16, 2013); *Leghorn v. Wells Fargo Bank*, --- F.Supp.2d ---, 2013 WL 3064548 (N.D. Cal. June 19, 2013); *Martorella v. Deutsche Bank Nat. Trust Co.*, --- F.Supp.2d ---, 2013, WL 1137514 (S.D. Fla. Mar. 18, 2013); *Casey v. Citibank, N.A.*, No. 12-820, --- F.Supp.2d ---, 2013 WL 11901 (N.D.N.Y. Jan. 2, 2013); *McNeary-Calloway v. JP Morgan Chase Bank, N.A.*, No. 11-3058, 2012 WL 1029502, at *23-29 (N.D. Cal. Mar. 26, 2012); *Ellsworth v. NYCB, N.A.*, No. 12-2506, --- F.Supp.2d ---, 2012 WL 6176905 (N.D. Cal. Dec. 11, 2012); *Gallow v. PHH Mortg. Corp.*, No. 12-1117, --- F.Supp.2d ---, 2012 WL 6761876 (D.N.J. Dec. 31, 2012); *Montanez v. HSBC Mortgage Corporation (USA),* No. 11-4074, --- F.Supp.2d ---, 2012 WL 2899371, at *6 (E.D. Pa. July 17, 2012); *Hofstetter v. Chase Home Fin.* LLC, No. 10-131, 2011 WL 1225900 (N.D. Cal. Mar. 31, 2011); *Williams v. Wells Fargo Bank N.A.*, No. 11-21233, 2011 WL 4901346, at *2, 4 (S.D. Fla. Oct. 14, 2011); *Gipson v. Fleet Mortg. Group, Inc.*, 232 F.Supp.2d 691, 707 (S.D. Miss. Nov. 7, 2002); *Stevens v. NYCB, Inc.*, No. 00-3815, 2000 WL 1848593, at *1, 3 (E.D. Pa. Dec. 15, 2000).

87.     These commission arrangements are also the subject of publicly-filed deposition testimony.  For example, in the *Hofstetter* case, Chase's representative testified that it is "a standard industry-wide practice" for a mortgage lender to be paid a commission by the insurance provider in connection with lender-placed insurance.  *See* Wheeler Dep. 67:5-14, Jan. 11, 2011 (attached

hereto as Exhibit 21).[5]   Like Nationstar, Chase procured its force-placed insurance coverage through Assurant.  *Id.* at 68:16-69:14.

88.     In addition, the commission arrangements between servicers and insurance firms including Assurant have been reported in *American Banker* magazine.  *See Ties to Insurers*, *supra*.[6] And in September 2013, Assurant and a major-lender agreed to a **$300 million settlement** to resolve accusations that they forced homeowners into buying overpriced property insurance and entered into kickback arrangements that inflated policy prices.  *See JPMorgan and Insurer Settle Suit*, DealBook (Sept. 9, 2013), http://dealbook.nytimes.com/2013/09/09/jpmorgan-and-insurer-settle-suit/?nl=business&emc=edit_dlbkam_20130910 (attached hereto as Exhibit 22).  The class-action lawsuit said the force-placed insurance practices unjustly enriched the lender and Assurant by more than $1 billion since 2008.  *Id.*

89.     According to a recent article published by American Banker, "a cursory review of force-placed insurers' financials suggests that the business brings servicers hundreds of millions of dollars each year."  *See Bead on Banks' FPI Policies, supra*.  Even more shocking, is that while these lenders and/or servicers are bringing in hundreds of millions of dollars through its involvement in force-placed insurance and creating a new "profit center" this same practice is

---

[5]  Shortly after the deposition testimony in *Hofstetter* became public (in March 2011), Chase entered into a multi-million dollar settlement (in July 2011), under which it agreed to disgorge 100% of the commissions that it received on force-placed flood insurance for eligible class members, and permanently refrain from accepting commissions in connection with force-placed flood insurance for HELOC borrowers.  Following notice to the class members, that settlement received final approval from the United States District Court for the Northern District of California (Alsup, J.) on November 14, 2011.

[6]  After publication, this article received the Society of American Business Editors and Writers award for "best investigative" writing for publications with a circulation of below 25,000.

forcing many homeowners that are struggling to pay their current mortgage payments into foreclosure.

90.     In return for the millions of dollars in commissions that are kicked back to Nationstar as well as other lenders and/or servicers, Assurant reaps *billions* of dollars in premiums.

91.     On March 14, 2012, Fannie Mae issued a Servicing Guide Announcement pertaining ("SGA") to force-placed insurance.  *See* SGA (attached hereto as Exhibit 23).  Fannie Mae clarified its requirements relating to reasonable reimbursable expenses for lender-placed insurance, and stated that "reimbursement of lender-placed insurance premiums must **exclude** any lender-placed insurance commission earned on that policy by the servicer or any related entity[.]" *Id.* at 4 (emphasis in original).[7]

92.     Earlier that same month, on March 6, 2012, Fannie Mae issued a Request for Proposal ("RFP") relating to lender-placed insurance.  *See* RFP (attached hereto as Exhibit 25).[8] In the RFP, Fannie Mae stated that it had conducted an "extensive internal review" of the lender-placed insurance process, and found that the process "can be improved through unit price reductions and fee transparency to the benefit of both the taxpayers and homeowners."  *Id.* at 2. In particular, Fannie Mae made the following observations:

> a)      "Lender Placed Insurers often pay commissions/fees to Servicers for placing business with them.  The cost of such commissions/fees is recovered in part or in whole by the Lender Placed Insurer from the premiums[.]"

_____

[7]  The U.S. Department of Housing and Urban Development has promulgated similar guidance in its Lender Manual [hereinafter "HUD Lender Manual"].  *See* HUD Lender Manual (attached hereto Exhibit 24).

[8]  The RFP was labeled "Confidential" by Fannie Mae, but subsequently was published in *American Banker* magazine.  *See* Jeff Horwitz, *Fannie Mae Seeks to Break up Force-Placed Market, Document Shows*, American Banker (May 24, 2012), http://www.americanbanker.com/issues/177_101/fannie-rfp-gse-contracting-document-1049630-1.html (attached hereto as Exhibit 26).

b)     "The existing system may encourage Servicers to purchase Lender Placed Insurance from Providers that pay high commissions/fees to the Servicers and provide tracking, rather than those that offer the best pricing and terms . . . . Thus, the Lender Placed Insurers and Servicers have little incentive to hold premium costs down."

c)     "[M]uch of the current legal placed insurance cost borne by Fannie Mae results from an incentive arrangement between Lender Placed Insurers and Servicers that disadvantages Fannie Mae and the homeowner."

*Id.*  Accordingly, Fannie Mae stated that it sought to "[r]estructure the business model to align Servicer incentives with the best interest of Fannie Mae and homeowners."  *Id.* at 3.  Among other things, Fannie Mae sought to "[e]liminate the ability of Servicers to pass on the cost of commissions/fees to Fannie Mae" and to "[s]eparate the commissions and fees for Insurance Tracking Services from the fees for Lender Placed Insurance to ensure transparency and accountability."  *Id.* at 2.

93.     Nationstar's conduct also stifles competition.  As the NAIC recently opined when asked whether pricing in the area of force-placed insurance industry is competitive, servicers have "no incentive to select a competitively priced product, but instead would be more concerned with selecting one they know best protects the bank's interest or one where they are provided with an incentive or inducement to enter into the transaction.  *See Ties to Insurers*, *supra*.

## V.     CLASS ACTION ALLEGATIONS

94.     Plaintiff bring this action against Nationstar and Assurant pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of themselves and all other persons similarly situated.  In connection with this action, Plaintiff seek to represent the following classes:

Nationwide Kickback Class:  All persons who have or had a loan or line of credit with Nationstar secured by their residential property in the United States, and who were charged for a force-placed insurance policy by Nationstar and/or its affiliates, entities, or subsidiaries within the applicable limitations period.

Nationwide Backdated Coverage Class:  All persons who have or had a loan or line of credit with Nationstar secured by their residential property in the United States,

who were charged for backdated force-placed insurance by Nationstar and/or its affiliates, entities, or subsidiaries within the applicable limitations period.

Escrow Subclass: All persons in the Nationwide Classes whose force-placed insurance premiums were escrowed by Nationstar.

Florida Subclass: All persons in the Nationwide Classes whose mortgage or line of credit owned or serviced by Nationstar was secured by property located within the State of Florida.

95.    The term "Class" or "Classes" as used below refers to the Nationwide Classes. Plaintiff reserve the right to modify or amend the definitions of the proposed classes before the Court determines whether class certification is appropriate.

96.    The Nationwide Classes exclude Defendants and any entity in which Defendants have a controlling interest, and their officers, directors, legal representatives, successors, and assigns.

97.     The Nationwide Classes are so numerous that joinder of all members is impracticable.

98.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy.

99.    Plaintiff's claims are typical of the claims of all Class members.

100.    There are questions of law and fact common to each of the Classes, the answers to which will advance the resolution of the claims of all of the Classes' members and that include, without limitation:

        (a)     Whether Nationstar maintained a policy of referring force-placed insurance business to insurers pursuant to pre-arranged agreements;

        (b)     Whether Nationstar or its subsidiaries or affiliates received commissions or any other payments or things of value from force-placed insurance providers;

(c)     Whether Defendants or their subsidiaries or affiliates participated in arrangements that involved kickbacks;

(d)     Whether Nationstar or their subsidiaries or affiliates received reinsurance premium payments from force-placed insurance providers;

(e)     Whether Nationstar received financial benefits from the force-placed insurance providers in the form of insurance monitoring, tracking and processing services;

(f)     Whether Nationstar's force-placed insurance policies were provided by an affiliated entity;

(g)     Whether Defendants received unauthorized and illicit payments or consideration in connection with force-placed insurance that were unrelated to a *bona fide* service in connection with the force-placed insurance and its purpose;

(h)     Whether Defendants received payments in connection with force-placed insurance that exceeded the value of any services actually performed or that were otherwise commercially unreasonable;

(i)     Whether Defendants improperly backdated force-placed insurance policies;

(j)     Whether Defendants required unnecessary or duplicative force-placed insurance;

(k)     Whether Defendants' conduct constituted an unconscionable business practice;

(l)     Whether Nationstar breached the implied covenant of good faith and fair dealing in Plaintiff's and members of the Classes' mortgages or loan contracts;

(m)     Whether Nationstar breached the terms of Plaintiff's and members of the Classes' mortgages or loan contracts;

(n)     Whether Defendants have been unjustly enriched;

(o)     Whether Defendants' business practices alleged herein are deceptive acts or practices;

(p)     Whether Nationstar breached their fiduciary duty to Plaintiff and members of the Classes;

(q)     Whether Nationstar's conduct as described herein violates TILA by, *inter alia*, changing its contractual agreed upon insurance requirements after-the-fact without proper notice or consent;

(r)     Whether Defendants are liable to Plaintiff and the Classes for damages and, if so, the measure of such damages; and

(s)     Whether Plaintiff and the Classes are entitled to declaratory, injunctive, and other equitable relief.

101.    These and other questions of law and fact are common to the Classes and predominate over any questions affecting only individual members of the Classes.

102.    Plaintiff will fairly and adequately represent and protect the interests of the Classes. Plaintiff have no claims antagonistic to those of the Classes.  Plaintiff have retained counsel competent and experienced in complex nationwide class actions, including all aspects of this litigation.  Plaintiff's counsel will fairly, adequately and vigorously protect the interests of the Classes.

103.    Class action status is warranted under Rule 23(b)(1)(A) because the prosecution of separate actions by or against individual members of the Classes would create a risk of inconsistent or varying adjudications with respect to individual members of the Classes, which would establish incompatible standards of conduct for Defendants.

104.   Class action status is also warranted under Rule 23(b)(1)(B) because the prosecution of separate actions by or against individual members of the Classes would create a risk of adjudications with respect to individual members of the Classes which would, as a practical matter, be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

105.   Class action status is also warranted under Rule 23(b)(2) because Defendants have acted or refused to act on grounds generally applicable to the Classes, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Classes as a whole.

106.   Class action status is also warranted under Rule 23(b)(3) because questions of law or fact common to the members of the Classes predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

## CLAIMS FOR RELIEF

### COUNT I
### BREACH OF CONTRACT / BREACH OF THE IMPLIED
### COVENANT OF GOOD FAITH AND FAIR DEALING
### (AGAINST THE NATIONSTAR DEFENDANTS)

107.   Plaintiff hereby incorporates by reference paragraphs 1-106 as if they were fully set forth herein.

108.   Nationstar has originated and/or serviced loans evidenced by substantially similar standard form notes, form mortgage contracts, and form deeds of trust.

109.   To the extent that the mortgage contracts of Plaintiff and the Classes permitted Nationstar to properly "force-place" insurance, Nationstar was contractually permitted to do so in a reasonable manner, *i.e.*, only to the extent reasonably necessary to protect the mortgagee's interest in the secured property.

110.    Nonetheless, Nationstar has imposed or collected amounts that exceeded the amounts necessary to protect the mortgagee's interest in the property.  Such practices have included, without limitation: (a) requiring borrowers to pay for insurance coverage that exceeds the amount necessary to protect the mortgagee's interest in the secured property; (b) backdating force-placed insurance policies, thus requiring borrowers to pay for retroactive coverage despite the fact that time has lapsed and no loss occurred during the lapsed period; (c) inflating the cost of the policies pursuant to an undisclosed kickback and commission scheme with Assurant; and (d) otherwise manipulating the force-placed insurance process.

111.    By force-placing insurance in this manner, Nationstar has breached their contractual obligations owed to Plaintiff and the Classes.

112.    As a direct, proximate, and legal result of the aforementioned breach of the express terms of the mortgage contracts, Plaintiff and the Classes have suffered damages and are entitled to the relief sought herein.

113.    In addition, every contract contains an implied covenant of good faith and fair dealing, whereby Nationstar agreed to perform the obligations under the policies in good faith, to deal fairly with Plaintiff and the Class, and to not charge excessive or unreasonable fees for the force-placed insurance for purposes of maximizing their own profits at the Class' expense.

114.    The mortgage contracts of Plaintiff and the Classes each contained an implied covenant of good faith and fair dealing, pursuant to which Nationstar was bound to exercise the discretion afforded it under the mortgage contract in good faith and to deal fairly with Plaintiff and the Classes in that regard.

115.    To the extent that the mortgage contracts of Plaintiff and the Classes permitted Nationstar to "force-place" insurance, Nationstar was obligated not to exercise its discretion by

35

acting in bad faith (for its own financial gain for the purposes of maximizing profits at borrowers' expense).

116.    Nationstar breached their duties of good faith and fair dealing in at least the following respects, among others:

(a)    Failing to make any effort to maintain borrowers' existing insurance policies and, instead – for the sole purpose of maximizing its own profit – forcing borrowers to pay for insurance policies from providers of Nationstar's choice.  These policies needlessly came with substantially greater premiums, while providing less coverage than borrowers' existing policies;

(b)    Using its discretion to choose a force-placed insurance provider and policy in bad faith and in contravention of the parties' reasonable expectations, by purposefully forcing borrowers to pay for both:  (i) the actual costs of protecting the mortgagee's interest in the property; and (ii) the cost of the kickbacks/reinsurance premiums that Nationstar accepted from the force-placed insurance provider;

(c)    Failing to seek competitive bids on the open market or otherwise making good faith efforts to reasonably exercise its discretion and instead selecting force-placed insurance providers according to pre-arranged secret deals whereby the insurance policies are continually purchased at excessive costs through the same companies in order to produce additional profits for Nationstar;

(d)    Assessing excessive, unreasonable, and unnecessary insurance policy premiums against Plaintiff and the Classes and misrepresenting the reason for the cost of the policies;

(e)     Collecting a percentage of the force-placed premiums charged to Plaintiff and the Classes and not passing that percentage on to the borrower, thereby creating the incentive to seek the highest-priced premiums possible;

(f)     Backdating force-placed insurance policies to cover time periods which already passed and for which there was no risk of loss;

(g)     Misrepresenting in its force-placed insurance notices that borrowers were obligated to pay for backdated insurance coverage for periods during which the lender had no risk of loss due to the passing of time or the lender's coverage under a Lender's Loss Payable Endorsement or "standard mortgage clause";

(h)     Procuring force-placed insurance policies to cover time periods during which the mortgagee is already covered pursuant to a Lender's Loss Payable Endorsement or "standard mortgage clause";

(i)     Failing to provide borrowers with any meaningful opportunity to opt out of having their force-placed insurance policies provided by an insurer with whom Nationstar has an affiliate relationship or commission arrangement; and

(j)     Charging Plaintiff and the Classes for having Assurant perform Nationstar's obligation of administering its mortgage portfolio.

117.    As a direct, proximate, and legal result of the aforementioned breaches of the covenant of good faith and fair dealing, Plaintiff and the other members of the Classes have suffered damages in an amount to be proven at trial.

## COUNT II
## UNJUST ENRICHMENT/DISGORGEMENT
## (AGAINST ALL DEFENDANTS)

118.    Plaintiff hereby incorporates paragraphs 1-106 as if they were fully set forth herein.

119.    Plaintiff and the Classes have conferred a substantial benefit upon Defendants derived from the force-placed insurance premiums paid by Plaintiff and the Classes.

120.    These payments were accepted and retained by Defendants under circumstances such that it would be inequitable for Defendants to retain the benefit without payment to Plaintiff and members of the Classes.

121.    Defendants entered into an agreement where Assurant would provide force-placed insurance policies to Nationstar, Plaintiff, and the Classes which were paid for by Plaintiff and the Classes at prices that were far higher than the market rates for similar policies.  Defendants knew that the charges for these policies were excessive and not the result of good faith practices.

122.    As a result of Defendants' unjust enrichment, Plaintiff and the Classes have sustained damages in an amount to be determined at trial and seek full disgorgement and restitution of Defendants' enrichment, benefits, and ill-gotten gains acquired as a result of the unlawful or wrongful conduct alleged above.

## COUNT III
## BREACH OF FIDUCIARY DUTY/MISAPPROPRIATION OF FUNDS HELD IN TRUST
## (AGAINST THE NATIONSTAR DEFENDANTS)

123.    Plaintiff hereby incorporates by reference paragraphs 1-106 as if they were fully set forth herein.

124.    Pursuant to Plaintiff's mortgage (and those of the Classes), the Nationstar Defendants hold and/or control funds in escrow; control the establishment, funding requirements, and maintenance of escrow accounts for the purposes of paying taxes, assessments, insurance

premiums, and other items set forth in borrowers' mortgages, and is obligated under the mortgages to return any excess funds in accordance with the terms of the mortgages.

125.    Since the time that the Nationstar Defendants began servicing Plaintiff's mortgage, Nationstar has required payment of and accepted monies from Plaintiff for escrow items.

126.    The Nationstar Defendants were obliged to hold, manage, and control these escrow funds in trust, and owed Plaintiff and members of the Classes the highest fiduciary duty with respect to the handling of such funds.

127.    The Nationstar Defendants breached their fiduciary duty to Plaintiff and the members of the Classes by, *inter alia*:  (a) unilaterally using escrow funds to purchase force-placed insurance at a cost and in amounts that were inflated solely in order to generate additional profits for Defendants; (b) profiting from unnecessary and excessive force-placed insurance policies that were purchased from escrow funds at the expense of Plaintiff and the members of the Escrow Subclass; (c) unilaterally utilizing the escrow funds to pay for unnecessary insurance for periods for purposes of increasing Defendants' profits; and (d) improperly depleting the escrow funds for unnecessary and unauthorized force-placed insurance resulting in additional costs and injury to Plaintiff and members of the Escrow Subclass.

128.    These actions were undertaken by Nationstar in bad faith solely for the benefit of Defendants and were not intended to benefit Plaintiff or members of the Escrow Subclass.

129.    As a direct result of Nationstar's actions and subversion of Plaintiff's interest to Defendants' own interests in reaping additional, extravagant, and unauthorized fees and profits, Plaintiff and the Escrow Subclass have suffered injuries in the form of unnecessary and excessive escrow charges, unnecessary and improper depletion of escrow funds intended for and properly

allocated to other escrow items, a loss of funds from their escrow accounts and/or loss of equity in the property due to increases in the amounts due under the mortgage to cover escrow shortfalls.

130.    Plaintiff and the Escrow Subclass are entitled to all damages resulting from Nationstar's breach of fiduciary obligations and misappropriation of escrow funds.  In addition, Plaintiff and the Escrow Subclass are entitled to punitive damages because Nationstar acted in bad faith in deliberate and/or reckless disregard of their rights and Nationstar's obligation to hold their escrow funds in trust.

**COUNT IV**
**VIOLATION OF THE TRUTH IN LENDING ACT**
**(15 U.S.C. § 1601 *ET SEQ.*) (AGAINST THE NATIONSTAR DEFENDANTS)**

131.    Plaintiff hereby incorporates by reference paragraphs 1-106 as if they were fully set forth herein.

132.    The mortgage loan agreements between Nationstar and its customers are subject to the disclosure requirements of the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 et seq., and all related regulations, commentary, and interpretive guidance promulgated by the Federal Reserve Board.

133.    Nationstar is a "creditor" as defined by TILA because it owned Plaintiff's mortgage agreement and changed the terms of that agreement so as to create a new loan obligation, of which Nationstar was the creditor.  When Nationstar added force-placed insurance charges to the Plaintiff's mortgage and charged them interest on these charges, it created a new loan subject to the requirements of TILA.  Alternatively, Nationstar is the "assignee" of Plaintiff's note and mortgage as defined by 15 U.S.C. § 1641.

134.    Nationstar is required to clearly, conspicuously, and timely disclose all finance charges, other charges, and third-party charges that may be imposed in connection with a mortgage loan or line of credit.

135.    Nationstar's disclosure inaccuracies are apparent on the face of the disclosures to Plaintiff because:  (a) the inaccuracies arose out of Nationstar's unilaterally changing the terms of Plaintiff's mortgage; (b) anti-coercion disclosures included with the mortgages explicitly stated that the lender was prohibited from conditioning its extension of credit on the borrowers purchasing any insurance product from the lender or its affiliates; (c) Plaintiff's mortgage does not authorize kickbacks, commissions, or other compensation to Nationstar or its affiliates for the purchase of force-placed insurance; and (d) Plaintiff's mortgage does not authorize backdated force-placed hazard insurance.

136.    Nationstar is further required to accurately and fully disclose the terms of the legal obligations between the parties.

137.    Nationstar violated TILA by (a) failing to clearly, fully, and accurately disclose its insurance requirements in its mortgages and (b) failing at all times to disclose the amount and nature of the kickbacks, commissions, or other forms of compensation Nationstar would receive for the purchase of force-placed insurance.

138.    Specifically, when Nationstar added the force-placed premium charge to the outstanding principal amount of Plaintiff's mortgage balance, a new debt obligation was created. At the moment Nationstar created this new debt obligation, it was required to provide new disclosures.

139.    12 C.F.R. § 226.18(d) requires disclosures of finance charges, which includes force-placed insurance premiums, including kickbacks under 12 C.F.R. § 226.4(b)(8).

Nationstar failed to disclose the nature and amount of all finance charges associated with the force-placed insurance premiums it added to the principal balance of Plaintiff's mortgage. This failure violated TILA.

140.    Plaintiff's TILA claim is timely.

141.    Nationstar systematically and pervasively engaged in similar violations of TILA to the detriment of other members of the Nationwide Classes.

142.    Plaintiff and the Nationwide Classes have been injured and have suffered a monetary loss as a result of Nationstar violations of TILA.

143.    As a result of Nationstar's violations, Plaintiff and the Nationwide Classes are entitled to recover actual damages and a penalty of $500,000 or 1% of Nationstar's net worth, as provided by 15 U.S.C. § 1640(a)(1) and (2).

144.    Plaintiff and the Nationwide Classes also are entitled to recovery of attorneys' fees and costs to be paid by Nationstar, as provided by 15 U.S.C. § 1640(a)(3).

145.    In addition, Plaintiff and the Nationwide Classes are entitled to a declaration that Nationstar's actions violate TILA, and corresponding injunctive relief enjoining Nationstar from engaging in further such violations.

**COUNT V**
**CONVERSION**
**(AGAINST THE NATIONSTAR DEFENDANTS)**

146.    Plaintiff hereby incorporates by reference paragraphs 1-106 as if they were fully set forth herein.

147.    Nationstar had and continues to have a duty to maintain and preserve borrowers' mortgage accounts, and mortgage escrow accounts, and to prevent their diminishment or alteration through its own wrongful acts.

148.    Nationstar wrongfully and intentionally collected insurance premiums from borrowers' mortgage escrow accounts or added such payments to borrowers' mortgage accounts.

149.    Nationstar collected these premiums by wrongfully and intentionally withdrawing specific and readily identifiable funds from borrowers' mortgage escrow accounts or misappropriating funds paid to borrowers' account balances for their regular monthly mortgage payments in order to fund its force-placed insurance scheme.

150.    The Nationstar Defendants have retained these funds unlawfully without the consent of Plaintiff and the Escrow Subclass and have deprived them from exercising control over the funds.

151.    Nationstar intends to permanently deprive Plaintiff and the Escrow Subclass of these funds.

152.    Plaintiff and the Escrow Subclass properly own these funds, not the Nationstar Defendants, who now claims that they are entitled to ownership of the funds contrary to the rights of Plaintiff and Escrow Subclass.

153.    Plaintiff and the Escrow Subclass are entitled to the immediate possession of these funds.

154.    Nationstar has wrongfully converted these specific and readily identifiable funds.

155.    Nationstar's wrongful conduct is of a continuing nature.

156.    As a direct and proximate result of Nationstar's wrongful conversion, Plaintiff and the Escrow Subclass have suffered and continue to suffer damages.  Plaintiff and the Escrow Subclass are entitled to recover from Nationstar all damages and costs permitted, including all amounts that Nationstar wrongfully converted, which are specific and readily identifiable.

**COUNT VI**
**TORTIOUS INTERFERENCE WITH A BUSINESS RELATIONSHIP**

**(AGAINST THE ASSURANT DEFENDANTS)**

157.    Plaintiff re-allege and incorporates Paragraphs 1-106 above as if fully set forth herein and further allege as follows.

158.    Plaintiff and the Class members have a business relationship with the Nationstar Defendants pursuant to the mortgage contracts.  Plaintiff and the Class have legal rights under these mortgage contracts.  For example, the Plaintiff and the Class have a right not to be charged exorbitant charges in bad faith for force-placed insurance.

159.    Assurant has knowledge of Plaintiff and the Classes' business relationship with Nationstar pursuant to the mortgage contracts.  Assurant is not a party to the mortgage contracts, nor is it a third-party beneficiary.  Further, Assurant does not have any beneficial, economic, or supervisory interest in the mortgage contracts.

160.    Assurant intentionally and unjustifiably interfered with the Plaintiff and the Classes' rights under the mortgage contracts, as described above by, *inter alia*, paying kickbacks to Nationstar and by charging for administering Nationstar's loan portfolio, which are purposefully and knowingly charged to Plaintiff and the Classes.

161.    Plaintiff and the Class have been damaged as a result of Nationstar's interference with their mortgage contracts by being charged bad faith, exorbitant, and illegal charges for force-placed insurance in contravention of their rights under the mortgages.

162.    Plaintiff and the Classes also seek restitution and disgorgement of profits realized by the Defendants as a result of their unfair, unlawful, and/or deceptive practices.

163.    Defendants received from Plaintiff and members of Classes a benefit in the form of overcharges for force-placed insurance policies which are excessive and unreasonable, and are the result of overreaching and self-dealing.

164.     Defendants entered into an agreement whereby Assurant (and/or its other force-placed insurance vendors) would provide force-placed insurance policies to Plaintiff and the Classes that were paid for at prices that were far higher than the market rates for similar policies. Defendants knew that the charges for these policies were excessive and not the result of good faith practices.

165.     Nationstar received from its force-placed insurance vendors, including Assurant, significant monies in illegal kickbacks, commissions, and referral fees directly to the Nationstar Defendants or their affiliates in order to be able to exclusively provide force-placed insurance policies at unreasonable rates.

166.     As a result, Plaintiff and the Classes have conferred a benefit on Defendants, and Defendants have knowledge of this benefit and have voluntarily accepted and retained the benefit conferred on them.

167.     Defendants will be unjustly enriched if they are allowed to retain the benefit and Plaintiff and each member of the Classes is entitled to an amount equal to the amount they enriched Defendants and for which Defendants have been unjustly enriched.

WHEREFORE Plaintiff and the Class members seek a judgment in their favor against the Assurant for the actual damages suffered by them as a result of Assurant's tortious interference. Plaintiff also seek all costs of litigating this action including attorney's fees.

## COUNT VII
### AIDING AND ABETTING OF BREACH OF FIDUCIARY DUTY/MISAPPROPRIATION OF FUNDS HELD IN TRUST (AGAINST THE ASSURANT DEFENDANTS)

168.     Plaintiff hereby incorporates by reference paragraphs 1-106 and 123-130 as if they were fully set forth herein.

169.    Pursuant to Plaintiff's mortgage (and those of the Classes), the Nationstar Defendants hold and/or control funds in escrow, control the establishment, funding requirements, and maintenance of escrow accounts for the purposes of paying taxes, assessments, insurance premiums, and other items set forth in borrowers' mortgages, and are obligated under the mortgages to return any excess funds in accordance with the terms of the mortgages.

170.    Since the time that Nationstar began servicing Plaintiff's mortgage, Nationstar has demanded payment of and accepted monies from Plaintiff for escrow items.

171.    Nationstar was obliged to hold, manage, and control these escrow funds in trust, and owed Plaintiff and members of the Classes the highest fiduciary duty with respect to the handling of such funds.

172.    Assurant substantially participated and aided and abetted the breach by Nationstar of their fiduciary duty to Plaintiff and the members of the Classes by, *inter alia*:  (a) participating in a scheme to knowingly allow the use of escrow funds to purchase force-placed insurance at a cost and in amounts that were inflated solely in order to generate additional profits for Assurant; (b) profiting from unnecessary and excessive force-placed insurance policies that were purchased from escrow funds at the expense of Plaintiff and the members of the Escrow Subclass; (c) knowingly aiding and abetting the use of the escrow funds to pay for unnecessary insurance for periods for purposes of increasing Assurant's profits; and (d) knowingly aiding and abetting the depletion of escrow funds for unnecessary and unauthorized insurance of Assurant resulting in additional costs and injury to Plaintiff and members of the Escrow Subclass.

173.    These actions were undertaken by Assurant in bad faith solely for the benefit of Assurant and were not intended to benefit Plaintiff or members of the Escrow Subclass.

174.    As a direct result of Assurant's actions and subversion of Plaintiff's interest to Defendants' own interests in reaping additional, extravagant, and unauthorized fees and profits, Plaintiff and the Escrow Subclass have suffered injuries in the form of unnecessary and excessive escrow charges, unnecessary and improper depletion of escrow funds intended for and properly allocated to other escrow items, a loss of funds from their escrow accounts and/or loss of equity in the property due to increases in the amounts due under the mortgage to cover escrow shortfalls.

175.    Plaintiff and the Escrow Subclass are entitled to all damages resulting from Assurant's aiding and abetting of the Nationstar Defendants' breach of fiduciary obligations and misappropriation of escrow funds.  In addition, Plaintiff and the Escrow Subclass are entitled to punitive damages because Assurant acted in bad faith in deliberate and/or reckless disregard of their rights.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that this Honorable Court enter a judgment against Defendants and in favor of Plaintiff and the Classes and award the following relief:

(a)    That this action be certified as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, declaring Plaintiff as representative of the Classes and Plaintiff's counsel as counsel for the Classes;

(b)    That the conduct alleged herein be declared, adjudged, and decreed to be unlawful;

(c)    Compensatory, consequential, and general damages in an amount to be determined at trial;

(d)    Statutory damages pursuant to TILA;

(e)    Restitution and/or disgorgement of Defendants' ill-gotten gains, and the imposition of an equitable constructive trust over all such amounts for the benefit of the Classes;

(f)     A judgment declaring that Defendants must cease the activities described herein, and provide members of the Classes with adequate remedies, including, without limitation, refunds or credits of all unfair, unlawful or otherwise improper force-placed insurance premiums, and provide for adequate policies and procedures to ensure that Defendants' unlawful conduct does not continue, including, without limitation, that Defendants:  (i) are prohibited from breaching TILA; (ii) are prohibited from force-placing excessive insurance; (iii) are prohibited from splitting fees, giving or accepting kickbacks or referral fees, or accepting anything of value in relation to the purchase or placement of force-placed insurance; (iv) must make reasonable efforts to continue or reestablish the borrower's existing insurance policy if there is a lapse in payment; (v) must purchase any force-placed insurance for a commercially reasonable price; and (vi) are prohibited from backdating force-placed insurance policies absent evidence of damage to the property or claims arising out of the property during any lapse periods;

(g)     Costs and disbursements of the action;

(h)     Pre- and post-judgment interest;

(i)     Reasonable attorneys' fees; and

(j)     Such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff and the Classes

demand a trial by jury on all issues so triable as a matter of right.

Dated:  November 25, 2013                    Respectfully Submitted,

                                            /s/ Kenneth G. Gilman
                                            Kenneth G. Gilman
                                            GILMAN LAW LLP
                                            Florida Bar No. 340758
                                            Beachway Professional Center Tower
                                            3301 Bonita Beach Road, Suite 202
                                            Bonita Springs, FL  34134
                                            Telephone:  (239) 221-8301
                                            Facsimile:  (239) 676-8224
                                            Email: kgilman@gilmanpastor.com

                                            *Attorney for Plaintiff and the Proposed*
                                            *Classes*